OPINION
BRENDA C. DESMOND, Justice:
This is an appeal of entry of a default judgment against Appellant Sandra Murray, (“Sandra”). We reverse the Tribal Court in accordance with the following.
The case has a long history which began in 1988 when the marriage of the parties, Appellant Sandra and Appellee Michael *63 Murray (“Michael”) was dissolved in the Tribal trial court. Sandra is a tribal member. Michael is not a tribal member. In a property settlement, child custody and support agreement (Ct. Doc. No 9, August 25, 1988), which was incorporated into the dissolution decree, the parties agreed to sell the marital trust property and divide the proceeds remaining after all liens were satisfied. Paragraph IV.(l) of the property settlement agreement states in part, “The real property shall be sold without undue delay and both parties shall do whatever is necessary to effectuate the sale of said real property.” To date, the property has not been sold, largely because Sandra has not cooperated in the sale. Michael has attempted to obtain Sandra’s cooperation through a series of court proceedings but so far has not been able to bring about enforcement of the real property provision in the settlement agreement.
On October 14, 1989, following entry of the decree, the parties executed a buy/sell agreement with Philip and Regina Shinn (Ct. Doc. No 13, November 6, 1989); this agreement was never carried out. (The Shinns lived on the property from November 1989 until January 1998, paid the parties $500 per month and made improvements on the property.) On August 16, 1991, Michael filed a “Petition for Past Due Property Settlement” asking the Trial Court to hold Sandra in contempt for not executing the documents required to transfer the property out of trust status so that the sale could proceed. That same day the Tribal Court issued an Order to Show Cause and set a hearing. Sandra did not appear for the hearing and on August 28, 1991, the Court issued a “Warrant of Commitment,” finding Sandra in contempt and ordering that she be placed in custody in the tribal jail until she had completed the trust transfer documents. Sandra was not arrested at that time because she was living outside of the reservation.
Then, in November 1991, Michael filed a Motion to Convey Title to Real Property, under Rule 70 of the Federal Rules of Civil Procedure, (made applicable to the Tribal Court by Chapter II § 3, CSKT Laws Codified), asking the Court to appoint a third party to execute the documents necessary to transfer the property out of trust. The Tribal Court granted the Motion and initially ordered that the administrator of Tribal Lands was to execute the necessary documents. Following objection by the Tribes, briefing and oral argument, the Court rescinded its Order to the Tribal lands administrator and directed instead that the documents were to be executed by the Tribal Clerk of Court. However, the Bureau of Indian Affairs declined to transfer the property out of trust on the signature of anyone other' than Sandra. Michael then filed an action in State District Court, Fourth Judicial District, Missoula County, in October 1995, seeking recognition and enforcement of the Tribal Court dissolution decree. The district court then issued an Order to show cause to Sandra and set the matter for hearing. Following the hearing, the district court dismissed the matter in favor of Tribal Court jurisdiction.
As a result of the dismissal of the state court proceeding and apparently in accordance with an agreement between the parties, on May 10, 1996, Sandra filed a motion in Ti'ibal Court seeking to reopen the dissolution decree for the purpose of relit-igating the distribution of property. On May 29, 1996, the Tribal Court granted the Motion, reopened the dissolution and set a hearing on the property distribution for July 9, 1996. At Michael’s counsel’s request, the hearing was reset for July 16, 1996. On that day Michael and his counsel appeared but Sandra and her counsel did *64 not. The hearing was rescheduled for September 9, 1996. All parties and counsel appeared on that date. The Court directed the parties to see if they could resolve the issues themselves.
The parties did not reach agreement, however, and provide differing accounts of the nature of their settlement discussions. On November 24, 1997, Michael filed a Motion requesting a hearing to determine the value of his interest in the property with the goal of resolving the matter by asking the Court to require Sandra to pay him for his interest in the property. Sandra’s counsel states that this Motion was filed after she had advised the court and Michael’s counsel that she was going to leave for a sabbatical several months in length. Michael’s counsel disputes this.
On March 23, 1998, the Tribal Court set the hearing on Michael’s Motion for April 27, 1998. The notice of hearing stated that the subject of the hearing was the “Interest in Marital Real Property.” According to Michael’s counsel, when Sandra’s counsel contacted him prior to the April 27 hearing he indicated to her that he would not oppose a motion for a continuance. Michael’s counsel states in his brief that he did not expect the Court to determine the property issue at the April 27 hearing, but that when he and his client appeared and Sandra and her counsel did not appear, the court asked him to file a petition for default so he did. Sandra’s counsel then filed a Motion for reconsideration and Motion for Rehearing dated May 1, 1998. (An amended Motion was filed on May 11, 1998.) The Motion was based on Sandra’s counsel’s account of the strenuous efforts she had made to be present by telephone at the April 27 hearing and explaining her inability to do so. The Petition for default was filed on May 8, 1998. No hearing was scheduled. In March 1999, Michael’s counsel wrote to the Tribal Court requesting a ruling or a hearing. On April 1, 1999, the Tribal Court entered default judgment in favor of Michael. It is from that judgment that Sandra appeals.
The Court held that the property value should be divided in half and that Sandra should pay Michael $53,500. To arrive at its valuation, the Court found that the original buy-sell agreement valued the property at $59,000 and that, as noted above, the Shinns had made payments of $550 per month to the parties from November 1989 until January 1998. The Court further found that the property was valued at $107,000 in an August 1997 appraisal. The Court then determined that the higher figure should be used because the property could not be sold prior to the present due to its trust status. The Court also determined that, because each party benefited equally from the Shinns’ payments and improvements, the amount Sandra was to pay Michael should not be reduced and the payments should be considered rent.
Sandra’s points of appeal, as set forth in her notice of appeal, are:
1. Improper and untimely entry of default,
2. Reliance on ex parte communications provided to the Court one year after the hearing,
3. Excessive award,
4. Defacto lien, alienation and/or encumbrances upon Indian trust status lands, contrary to federal law.
Because we decide this matter on the basis of Point No. 1, propriety of entry of default, we do not address Sandra’s remaining points of appeal.
Since the issue we do address is solely a legal issue, we apply the de novo standard of review, the least deferential standard, to the Tribal Court judgment. Northwest Collections, Inc. v. Pichette, *65 AP-93-077-CV, App.Ct. Confederated Salish and Kootenai Tribes 1995.
Entry of default
Sandra argues, correctly, that default judgments are generally disfavored in law. She then reminds us of the unfortunate circumstances concerning her representation (or lack of representation) at the April 1998 hearing. She also argues that it was her understanding that, despite the clear contents of the notice of hearing, this would be a status hearing only. Thus, in her view, she did not receive effective notice of the possibility of entry of default.
Michael does not address the default issue in detail, arguing generally instead, that the judgment should be affirmed due to the long history of his efforts to get the 1989 judgment implemented and the number of occasions on which Sandra has not appeared for hearings. Understandably, his view appears to be that Sandra has had ample opportunity to bring her concerns to coui't and he has waited too long for the dissolution decree to be satisfied.
We reverse the judgment of the Tribal Court for its lack of compliance with the tribal code. Neither Sandra nor Michael addressed the tribal code provision on entry of defaults set forth in Title IV, CSKT Laws Codified, which is dispositive of this appeal. Section § 4-3-105, Default, provides that a default judgment may not be entered unless the party entitled to default requests it. Section 4-3-105(3), provides that if a party has appeared in the action that party must be served with written notice of application for default judgment at least 3 days prior to the hearing. Although § 4-3-105(4) does not require a hearing in all cases, it does require a hearing, when, as here, the Court must determine the amount of the award. Under this section, prior to entry of default, Sandra, was entitled to advance notice that an application for default had been filed and notice of the hearing on the default. Because no application for default had been filed prior to the hearing, Sandra was notified only that a hearing would be held on the marital interest in property.
As noted earlier, the law does not favor defaults. See e.g., Sage v. Lodge Grass, No. 82-287, Crow Court of Appeals, July 30, 1986; Kenner v. Moran, 263 Mont. 368, 868 P.2d 620 (1994). Further, the Tribal Council has enacted a very specific procedure for the acquisition of a default judgment which was not followed in this case. This may seem harsh to Michael. However, we are not reviewing ten years of Court Orders and judgments, only the default judgment of April 1, 1999. We do not wish this decision to be interpreted as supporting actions by parties in tribal court proceedings that either directly violate court orders or have the effect of undermining respect for the court. However, the law disfavoring defaults requires us to interpret the tribal code provision strictly in favor of the defaulting party, leaving reversal as our only option.
THEREFORE, the judgment of the Tribal Court is reversed and this matter is remanded to the Tribal Court for proceedings in accordance with this decision.
Associate Justices FORD and DUPUIS concur in this decision.